UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARDAVAN ASLIE, | No. 2:24-cv-01181 AC |
| Plaintiff, | |
| v. | ORDER |
| AMERICAN BOARD OF ORTHOPAEDIC SURGERY, | |
| Defendant. | |

This action was removed from state court on April 23, 2024, and is before the undersigned for all purposes on consent of the parties. ECF Nos. 1, 8. On April 30, 2024, defendant filed a motion to dismiss or transfer, disputing personal jurisdiction and the propriety of venue. ECF No. 5. Id. Plaintiff opposes the motion. ECF No. 10. Defendant filed a reply brief. ECF No. 11. The motion was submitted for decision on the papers. ECF No. 13. For the reasons that follow, defendant's motion is GRANTED, and this case is dismissed for lack of personal jurisdiction over defendant.

I.      **Allegations of the Complaint**

Plaintiff is an orthopaedic surgeon who resides in Sacramento County and has long practiced medicine in the Sacramento region. ECF No. 1-1 at 3, 4-5.[1] Defendant, the American

---

[1] All citations to documents filed in this case refer to the page numbers imposed by the court's CM/ECF system, not to the pagination of the original documents.

1  Board of Orthopaedic Surgery ("ABOS") is "an organization that establishes educational
2  standards for orthopaedic residents by evaluating the initial and continuing qualifications and
3  competence for orthopaedic surgeons." Id. at 3. Plaintiff alleges that the ABOS administrative
4  offices are in North Carolina, but that revocation of ABOS certification impacts plaintiff in his
5  business in California. Id. at 3.

6  Plaintiff alleges that he has been a member of the American Academy of Orthopaedic
7  Surgeons since 2002 and was certified by ABOS in 2005. Id. at 5. To obtain ABOS certification,
8  candidates must complete a two-pronged set of examinations, several years apart and early in
9  their practice, both of which plaintiff passed. Id. Every 10 years, ABOS members are required to
10 complete a certain number of continuing education courses and pass another exam to maintain
11 their certification. Id. Plaintiff maintained his certification, and in early 2023 filed an application
12 to take his next required examination, which would become due in 2025. Id. at 6. On April 21,
13 2023, ABOS wrote a letter to plaintiff stating that he was approved to continue the renewal
14 process but that he would be required to take an oral examination rather than the standard written
15 exam. Plaintiff was informed that unspecified "questions" had been raised about his medical
16 practice but was assured that the requirement of an oral examination did not constitute an adverse
17 action. Id.

18 Plaintiff sat for his oral examination from July 16-19, 2023, and believed he had
19 performed well. Id. On September 1, 2023, plaintiff was informed he did not pass the
20 examination. Id. Accordingly, he is ineligible for ABOS re-certification. See id. at 7, 10. Lack
21 of certification will effectively end plaintiff's career as an orthopaedic surgeon. Id. at 10.
22 Plaintiff contends that he was deliberately failed because of his outspoken opposition to an item
23 of surgical hardware. Since approximately 2015, plaintiff has been a vocal critic of a widely used
24 pedicle screw (a large screw that is inserted into the vertebral body of a patient to immobilize the
25 spine and correct deformities). Id. at 8-9. He has spoken about the dangers of this screw at
26 professional conferences and on podcasts, and he has advocated against the use of the device. He
27 has written to the Food and Drug Administration about his concerns, and he has released a book
28 discussing his opposition to use of the screw. Id. Plaintiff also "created Aslie Laminar Plating

1  System which achieves rigid fixation without vertebral penetration." Id. at 9.  Plaintiff's
2  opposition to use of the pedicle screw has been met with animosity from the professional
3  mainstream because "[t]he implications of [his] recommendations would indicate a bifurcation of
4  the fields of orthopaedics and spine surgery as a whole.  This would necessitate having separate
5  board certifications for each field, and the need for separate residency programs for each." Id.
6      Plaintiff alleges that

> ABOS is largely composed of leading surgeons, all of whom utilize the pedicle screw.  These leaders are unwilling to divorce themselves from the use of the pedicle screw. Dr. Aslie is informed and believes that if these individuals admit that the pedicle screw is dangerous and faulty they may expose themselves to liability for having continued to use the technology all these years since the information became available to them through the peer-reviewed studies published over the years. ABOS has an interest in maintaining the status quo as it is has been all these years.

12  Id. at 8.
13      The complaint presents two claims: (1) violation of the common law right of fair
14  procedure, and (2) willful denial of certification.  Id. at 10-13.  Plaintiff seeks compensatory
15  damages, reinstatement into ABOS, punitive damages, and other relief the court deems proper.
16  Id. at 13.

## II.   Motion to Dismiss

18      Defendant asks the court to (1) dismiss this action for lack of personal jurisdiction (Fed.
19  R. Civ. P. 12(b)(2)), or (2) dismiss for improper venue (Fed. R. Civ. P. 12(b)(3)) or, in the
20  alternative, transfer venue to the United States District Court for the Northern District of Illinois
21  (28 U.S.C. §§ 1391(b)(2) and 1406(a)).  ECF No. 5.

## III.   Standards

23  A. Motions Under Fed. R. Civ. P. 12(b)(2)
24      On a motion challenging personal jurisdiction under Federal Rule of Civil Procedure
25  12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, "bears
26  the burden" of establishing that jurisdiction exists.  In re Boon Global Ltd., 923 F.3d 643, 650
27  (9th Cir. 2019).  When the court decides the issue of jurisdiction without an evidentiary hearing,
28  based only on affidavits and discovery materials, a "plaintiff must make only a prima facie

showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

The prima facie showing is achieved by producing admissible evidence which, if believed, would sufficiently establish personal jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Accordingly, the court accepts uncontroverted facts in the complaint as true. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Jurisdictional facts cannot, however, be established by nonspecific, conclusory statements. Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citing Kaylor v. Fields, 661 F.2d 1177, 1182-83 (8th Cir. 1981) (although liberally construed, the complaint "must contain something more than mere conclusory statements that are unsupported by specific facts")). Additionally, plaintiff cannot solely rely on allegations in the complaint when they have been challenged by affidavit, Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967), although conflicts between affidavits are resolved in plaintiff's favor, Mavrix, 647 F.3d at 1223.

B. Legal Principles Governing Personal Jurisdiction

In determining the existence of personal jurisdiction, a district court with diversity jurisdiction generally applies the law of the state in which the district court sits. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. Id. (citing Cal. Code Civ. Proc. § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

Personal jurisdiction may be either "general" or "specific." Dole Food Co. v. Watts, 303 F.3d 1104, 1110–11 (9th Cir. 2002). General personal jurisdiction exists only when a defendant is physically present or when a defendant's activities in the forum state are "continuous and

systematic" such that the contacts approximate physical presence in the forum state. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). "General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[matic]...bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). The Ninth Circuit has rejected the argument that "general jurisdiction is appropriate whenever a corporation 'engages in a substantial, continuous, and systematic course of business' in a state." Martinez, 764 F.3d at 1070 (internal citation omitted). Instead, if a business is not incorporated in and does not have its principal place of business in a forum state, "[o]nly in an 'exceptional case' will general jurisdiction be available." Id.

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citations omitted). The Ninth Circuit has adopted a three-pronged test to determine whether a court may exercise personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix, 647 F.3d at 1227-1228 (citations omitted). The plaintiff has the burden on the first two prongs, after which "the burden . . . shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802.

The first prong may be satisfied by either purposeful direction or purposeful availment. In "tort-like" cases, the Ninth Circuit focuses on purposeful direction and applies the three-part test articulated in Calder v. Jones, 465 U.S. 783, 788-789 (1984). Mavrix, 647 F.3d at 1228. This test requires plaintiff to show that (1) the defendant committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. Id. The Calder test is sometimes referred to as the "effects test." See Schwarzenegger, 374 F.3d at 803. In evaluating the purposeful direction prong under Calder, the court does not limit itself to the defendants' allegedly wrongful acts but looks at all related conduct. Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc).

The second prong of specific jurisdiction, in contrast, *is* limited to consideration of the defendant's allegedly wrongful acts. It focuses on "the relationship between the cause of plaintiff's harm and the defendant's acts identified as creating purposeful contacts with the forum state." Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). This prong is satisfied where the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 983 (9th Cir. 2021) (citation omitted). The required nexus need not rise to the level of "but for" causation, Ford Motor Co. v. Montana Eighth Judicial District, 141 S. Ct. 1017, 1026 (2021), but does require a direct link between plaintiff's cause of action and the actions of defendant that satisfied the first prong. See Lake, 817 F.2d at 1421.

### IV. Jurisdictional Facts

This case was removed to federal court based on diversity jurisdiction. 28 U.S.C. §1332. Plaintiff is a resident of California, and defendant is a non-profit corporation incorporated in Delaware with its principal place of business in North Carolina. ECF No. 1-1 (Complaint) at 3, 4; ECF No. 5 at 14 (Declaration of David F. Martin). The complaint alleges as a basis for personal jurisdiction over ABOS that "the revocation of ABOS certification impacts Plaintiff in his place of business." ECF No. 1-1 at 4.

ABOS has presented admissible evidence that it accepts applications for board certification from candidates nationwide, but that candidates reach out to ABOS to seek

certification rather than the other way around. ECF No. 5 at 15. ABOS does not have any employees, operations, or company resources in California. Id. at 14. To the extent ABOS engages in any outreach or marketing, the efforts are directed to a nationwide audience, and are not specially directed to any particular state. Id. at 15.

In opposition to the motion, plaintiff contends that defendant "has embedded itself in professional and educational standards required for orthopaedic surgery physicians and residents across the country, including and especially in California." ECF No. 10 at 6. Plaintiff represents that ABOS certification is "a *de facto* requirement to practice orthopaedic surgery in many medical facilities in California." Id. Plaintiff also characterizes defendant's maintenance of certification processes as a structure creating "continuing obligations between itself and [its] target market[.]" Id. The opposition also asserts without evidentiary support that "the bulk of ABOS's physician interactions" and related revenue involve California-based physicians. Id.[2] The only citation is to data compiled by the Bureau of Labor Statistics regarding the employment numbers for orthopaedic surgeons in California generally. Id. at 4, n.2.

### V. Analysis

#### A. General Personal Jurisdiction

ABOS contends that this court lacks personal jurisdiction because it is not incorporated in California, it does not have its principal place of business in California, and it has not purposefully directed its activities to the state of California in particular. ECF No. 5 at 2. The lack of general jurisdiction is obvious and is essentially undisputed in this case, as plaintiff argues only for the existence of specific jurisdiction. See ECF No. 10 at 4.

#### B. Specific Personal Jurisdiction

##### 1. First Prong: Activities Directed to Forum State

In opposition to the motion to dismiss, plaintiff relies primarily on ABOS's ongoing activities vis-à-vis California orthopaedic surgeons generally. The court finds this argument

---

[2] Defendants object that these and related assertions of fact in the opposition are unsupported by any admissible evidence. ECF No. 11 at 3-4. Defendants are correct, but the court will accept these facts as proffered by plaintiff for purposes of discussion.

7

unpersuasive.  Plaintiff has not provided facts showing that ABOS directs its regular activities to California.  As defendant argues, the seeking of ABOS certification by California physicians is not action taken by the defendant that could constitute action directed to the forum state.  There is no factual basis for a conclusion that nationally-recognized certification, issued by a non-resident entity, could itself be considered an act taken in or "directed to" the state in which any particular doctor is licensed and practices.  And as defendant also argues, the fact that hospitals in California or elsewhere may require ABOS certification as a requirement for privileges is not action taken by defendant and therefore has no jurisdictional relevance.  Accordingly, the undersigned rejects plaintiff's theory that ABOS has established a reciprocal relationship with California orthopaedic surgeons sufficient to support jurisdiction.  Just as national membership organizations are not subject to personal jurisdiction in every state where they have members, see O'Handley v. Padilla, 579 F. Supp. 3d 1163 (N.D. Cal. 2022) (citing Szabo v. Med Info. Bureau, 127 Cal. App. 3d 51 (1981)), national medical boards are not automatically subject to personal jurisdiction in every state where the doctors they certify practice medicine.

The complaint itself predicates jurisdiction on the effects of defendant's allegedly wrongful acts on the California plaintiff.  ECF No. 1-1 at 4 (alleging in support of jurisdiction that although ABOS is located in North Carolina, "the revocation of ABOS certification impacts Plaintiff in his place of business.").  This suggests the Calder effects test, described above, which can be used to satisfy the first prong of specific jurisdiction.  Mavrix, 647 F.3d at 1228.  Although plaintiff has not briefed the Calder standard, the undersigned will address it in light of plaintiff's reliance on the consequences of the ABOS actions that are challenged in this lawsuit.

As to the first Calder factor, defendant's alleged act of "deliberately failing" plaintiff on his exam, and thus rendering him ineligible for ABOS re-certification, was an intentional act.  As to the third factor, the effects of wrongful refusal to certify plaintiff are plainly experienced by him in California, where plaintiff practices medicine and requires hospital privileges.  Because ABOS knew that plaintiff practices in California, it knew that the brunt of the harm was likely to be suffered in the forum state.  This satisfies the third factor.  Calder also requires that the intentional act be "expressly aimed at the forum state." Mavrix, 647 F.3d at 1228.  This presents

a harder question on the facts of this case.

The intentional act which satisfies the first Calder factor in this case did not itself occur in California,³ but the complaint also alleges that plaintiff was targeted for that act while residing and practicing in California. There is support for the proposition that targeting an individual or business in another jurisdiction for adverse action constitutes "purposeful direction." See, e.g., Amazon.com, Inc. v. National Association of College Stores, Inc., 826 F. Supp. 2d 1242, 1255 (W.D. Wash. 2011) (finding personal jurisdiction over national trade association alleged to have individually targeted plaintiff in the forum state). And the Ninth Circuit has emphasized that the Calder test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo!, 433 F.3d at 1206.

It is unnecessary for this court to decide whether defendant's actions in this case were "expressly aimed at the forum state" within the meaning of Calder. That is because even if Calder is satisfied, jurisdiction is lacking because plaintiff has not met his burden on the second prong. The court now turns to that issue.

2. Second Prong of Specific Jurisdiction: Relationship of Claims to Forum-Directed Activity

Even assuming that the first prong of specific jurisdiction can be satisfied by plaintiff's experience in California of the effects of ABOS's alleged wrongful acts, the second prong requires a direct nexus between plaintiff's claims and defendant's forum-specific activities. See Lake, 817 F.2d at 1421. The claims presented in plaintiff's complaint are Violation of the Common Law Right of Fair Procedure and Wrongful Denial of Certification. ECF No. 1-1 at 10, 12. These claims arise directly from the re-certification test that plaintiff took in Chicago, which he alleges was wrongfully assigned a failing grade. Any wrongful grading of that oral examination would necessarily have taken place in Chicago, assuming contemporaneous scoring.

---

³ To the extent that plaintiff relies on the letter he received in California informing him that an oral examination was required, the court finds this insufficient to support jurisdiction. Such a letter is analogous in this court's view to a case-and-desist letter, the sending of which is insufficient without more to constitute forum-directed activity that satisfies the purposeful direction requirement. See Yahoo!, 433 F.3d at 1208. Both are single communications preceding the action that is alleged to have substantively violated plaintiff's legal rights or interests.

Even if the scoring did not happen at or immediately after the examination, there is no suggestion that the assignment of a failing grade was an act taken in California. Neither is there any suggestion that any prior decision to require the oral exam, or any post-exam determination of plaintiff's eligibility for recertification, were made in California. The complaint's acknowledgement that the ABOS administrative offices are in North Carolina supports a contrary inference.

In sum, the undersigned agrees with defendant that plaintiff's claims arise from alleged harms that were inflicted outside of California in direct relation to the oral examination. Effects felt in California may satisfy the first prong of specific jurisdiction, but the second prong must be given independent weight. It focuses on the causes of action, not on the site of any negative consequences that may be relevant to damages. Because plaintiff's causes of action arise from events that occurred in Illinois and not from any actions that ABOS directed to California, this court may not exercise personal jurisdiction over the defendant.

## VI.   Conclusion

For the foregoing reasons, defendant's motion to dismiss (ECF No. 5) is GRANTED and this case is DISMISSED without prejudice to re-filing in a proper jurisdiction.

DATED: August 1, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE